639 A.2d 1245

Thomas and Etta Mae BROWN, H/W,

v.

PHILADELPHIA ASBESTOS CORPORATION, GAF Corporation, Raymark Industries, Inc., Southern Textile, Garlock, Inc., Fibreboard Corporation, Eagle–Picher Industries, Inc., Keene Corporation, Celotex Corporation, J.P. Stevens and Company, Inc. and Owens–Illinois Glass Co.

Appeal of FIBREBOARD CORPORATION.

Thomas BROWN and Etta Mae Brown, H/W

v.

PACOR, INC., Eagle Picher Industries, Keene Corporation, Southern Textile Company, J.P. Stevens Company, Garlock, Inc., Celotex, Inc., Owens–Illinois Glass Company, Fibreboard Corporation, GAF Corporation, Forty–Eight Insulation, Inc. and Raymark, Inc.

Appeal of KEENE CORPORATION.

Superior Court of Pennsylvania.

Argued March 9, 1993.

Filed April 11, 1994.

132

David A. Cohen, Philadelphia, for appellant Fibreboard and appellant Keene Corp.

Steven J. Cooperstein, Philadelphia, for appellees Brown.

Before CAVANAUGH, JOHNSON and HOFFMAN, JJ.

HOFFMAN, Judge.

This is an appeal from the July 22, 1992 order denying appellants', Fibreboard Corporation and Keene Corporation, motions for judgment n.o.v., new trial and/or remittitur. Appellant Keene Corporation (hereinafter "Keene") presents one issue for our consideration:

> Whether the Trial Court erred in failing to grant defendant Keene Corporation's motion for non-suit and directed verdict ... on the ground that plaintiff's sole alleged asbestos-related condition, non-impairing pleural thickening, was not compensable as a matter of law.

Keene's Brief at i. Appellant Fibreboard Corporation (hereinafter "Fibreboard") presents the following issues:

1. Does the law of Pennsylvania permit a plaintiff to recover damages on the basis of plaintiff's counsel's fear, as expressed in his summation, that the defendant may be bankrupt in the future and therefore not answerable for damages should the jury fail to award damages presently?

2. Does the law of Pennsylvania permit a plaintiff to recover damages for physical pain and suffering where the plaintiff has failed to allege any such damages?

3. Whether the court below erred in denying Fibreboard's Motion for New Trial on the grounds that the amount of the jury's award was not supported by the evidence and was arbitrary and capricious?

4.  Whether the court below committed an error of law in denying Fibreboard's Motion for Remittitur?

Fibreboard's Brief at i.  For the reasons that follow, we stay in part, reverse in part and vacate in part.

Appellees, Thomas and Etta Mae Brown, filed a complaint on July 22, 1982, against appellants, Keene and Fibreboard, *et al.*, to recover for injuries arising out of Mr. Brown's occupational exposure to asbestos.  The case was consolidated with two other similar actions filed by James Didio and John Andrews.  A joint trial commenced before the Honorable Charles Wright and a jury, with the damage stage preceding the liability determination.  The jury determined that Mr. Brown suffers from asbestos-caused pleural thickening and awarded appellees damages in the amount of four hundred thousand dollars.  Keene and Fibreboard stipulated that their shares of liability for appellees' damages would be one-seventh and one-sixth respectively.  Post-trial motions were filed and denied.  This timely appeal followed.

■  On December 3, 1993, Keene Corporation filed a bankruptcy petition under 11 U.S.C. § 301 in the United States Bankruptcy Court for the Southern District of New York.  In light of the automatic stay provisions of the United States Bankruptcy Code, we must preliminarily determine whether this court may address the merits of Keene's appeal.

11 U.S.C. § 362(a)(1) provides as follows:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against

the debtor that arose before the commencement of the case under this title[.]

*Id.*

We point out that this stay includes "appeals in actions that were originally brought against the debtor, regardless of whether the debtor is the appellant or the appellee." *Borman v. Raymark Industries, Inc.,* 946 F.2d 1031, 1033 (1991). Moreover, the stay may not be waived by either creditor or debtor. *Maritime Elec. Co., Inc. v. United Jersey Bank,* 959 F.2d 1194, 1206 (3rd Cir.1991). Finally, "[t]he automatic stay's effect on judicial proceedings against the debtor does not depend upon whether the court finds *for* or *against* the debtor." *Id.*

As Keene's appeal arises from an action brought against Keene before the filing of his bankruptcy petition, we must stay Keene's appeal pending the conclusion of the bankruptcy proceedings.[1] Moreover, as the automatic stay applies only to the bankrupt debtor, we must sever Keene from the instant appeal. *See* 11 U.S.C. § 362(a). *See also Maritime Elec. Co., Inc. v. United Jersey Bank,* 959 F.2d at 1205. Accordingly, we will proceed with the merits of Fibreboard's claims.

Fibreboard contends that the trial court erred in failing to grant its motions for directed verdict as appellees failed to allege any damages for pain and suffering.[2] Specifically, Fibreboard argues that as Mr. Brown's pleural thickening is asymptomatic,[3] producing no physical or functional impairment, it is not an injury entitling appellees to compensation.

1. Although Keene's appeal is stayed under 11 U.S.C. § 362(a)(1), we do not imply that it would be improper for the bankruptcy court to lift or modify the stay to permit disposition.

2. Because of our disposition of Fibreboard's claims for a directed verdict, we need not address their other contentions of trial court error.

3. Dr. William Fineman, M.D., testified as an expert witness on behalf of Mr. Brown. Dr. Fineman testified that Mr. Brown's thickening condition had no impact on his ability to perform any of life's functions. Deposition testimony of Dr. Fineman 9/19/91 at 43. Dr. Fineman further testified that the symptoms Mr. Brown currently exhibits, occasional wheezing and shortness of breath, are attributable to his asthmatic bronchitis rather than his pleural thickening condition. *Id.* at 45.

We agree and accordingly reverse and vacate the judgment entered against Fibreboard.

It is well-settled that "[w]hen deciding whether to grant a motion for a directed verdict, the trial court must consider the facts in the light most favorable to the non-moving party and must accept as true all evidence which supports that party's contention and reject all adverse testimony." *Boyce v. Smith–Edwards–Dunlap Co.*, 398 Pa.Super. 345, 354, 580 A.2d 1382, 1387 (1990), *appeal denied*, 527 Pa. 650, 593 A.2d 422 (1991). On review we will reverse the trial court's decision only if there is an abuse of discretion or error of law. *Id.*

This court has recently held *en banc* that asymptomatic pleural thickening is not compensable as a matter of law.[4] *Giffear v. Johns–Manville, Corp., et al.*, 429 Pa.Super. 327, 632 A.2d 880 (1993). It is undisputed in the instant case that Thomas Brown suffered only from asymptomatic pleural thickening. As appellees have no legally cognizable claim, directed verdict should have been granted to Fibreboard.

Accordingly, Keene's appeal is stayed pending the conclusion of the bankruptcy proceedings. However, regarding Fibreboard, we vacate that part of the July 22, 1992 judgment order as entered against Fibreboard.

Stayed in part; reversed in part; vacated in part.

JOHNSON, J., files a dissenting opinion.

4. Although *Giffear* was filed after the complaint in the underlying action, "[w]here an appellate decision overrules prior law and announces a new principle, unless the decision specifically declares the ruling to be prospective only, the new rule is to be applied retroactively to cases where the issue in question is properly preserved at all stages of adjudication up to and including direct appeal." *Blackwell v. Commonwealth, State Ethics Comm'n*, 527 Pa. 172, 188, 589 A.2d 1094, 1102 (1991) (quoting *Commonwealth v. Cabeza*, 503 Pa. 228, 233, 469 A.2d 146, 148 (1983)). As *Giffear* does not specify whether its holding is prospective or retroactive and as Fibreboard has properly preserved the issues dealt with in *Giffear*, we will apply the holding in *Giffear* to the instant action.

JOHNSON, Judge, dissenting.

The above-captioned case is another case in which an asbestos plaintiff "with asymptomatic pleural thickening" has received a jury award. In each of these cases, *Murray v. Philadelphia Asbestos Corporation et al.,* 433 Pa.Super. 206, 640 A.2d 446 (1993); *Didio v. Philadelphia Asbestos Corporation et al.,* (Nos. 2867–2869 Philadelphia 1992) 1994 WL 119817 (1993); a proposed Opinion has been circulated which would apply retroactively this Court's decision in *Giffear v. Johns–Manville Corp.,* 429 Pa.Super. 327, 632 A.2d 880 (1993), to these cases. *Giffear* has been applied retroactively on the basis that:

> Where an appellate decision overrules prior law and announces a new principle, unless the decision specifically declares the ruling to be prospective only, the new rule is to be applied retroactively to cases where the issue in question is properly preserved at all stages of adjudication up to and including any direct appeal.

*Blackwell v. Commonwealth, State Ethics Comm'n,* 527 Pa. 172, 188, 589 A.2d 1094, 1102 (1991), quoting *Commonwealth v. Cabeza,* 503 Pa. 228, 233, 469 A.2d 146, 148 (1983).

However, *Blackwell,* states that "although retroactivity is the general rule, a sweeping rule of retroactive application is not justified. Retrospective application is a matter of judicial discretion which must be exercised on a case by case basis." 527 Pa. at 182, 589 A.2d at 1099. As *Blackwell* states:

> The U.S. Supreme Court has viewed the decision of whether to apply a new rule retroactively or prospectively as a function of three considerations: (1) the purpose to be served by the new rule, (2) the extent of the reliance on the old rule, and (3) the effect on the administration of justice by the retroactive application of the new rule. We have adopted this three-factor standard and apply it when a question of the retroactivity or nonretroactivity of a new decision is before us.

*Id.* at 183, 589 A.2d at 1099 (citation omitted).

*Blackwell* recounts three separate factors that are to be considered in arriving at this determination:

First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear prior precedent on which litigants may have relied ... or by deciding an issue of first impression whose resolution was not clearly foreshadowed.... Second, it has been stressed that "we must * * *weigh the merits and demerits in each case by looking to the past history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." .... Finally, we have weighed the inequity imposed by retroactive application, for "[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity.["]

*Id.* at 184, 579 A.2d at 1100, *citing Chevron Oil Company v. Huson,* 404 U.S. 97, 106–107, 92 S.Ct. 349, 355, 30 L.Ed.2d 296, 306 (1971).

We have not actually considered whether *Giffear* should apply retroactively or prospectively. *See* Dissents by Johnson, J., in *Murray v. Fibreboard Corporation et al.,* 433 Pa.Super. 206, 640 A.2d 446 (1993); *Didio v. Fibreboard Corporation et al.,* 1994 WL 119817 (1993) (Docket Nos. 2867–2869 Philadelphia 1992). Rather, there has been an unconsidered assumption that *Giffear* is to be applied retroactively. This assumption has prevailed notwithstanding that the issue has not been directly raised before our Court; and, notwithstanding that we have not had the benefit of reasoned argument by the parties on whom the burden of these decisions would fall.

I am unable to join decisions which quote *Giffear* to deem requests for remittitur sufficient to preserve risk of cancer/fear of cancer issues. I fail to see that a request for remittitur has the particularity or precision to adequately preserve this issue. *See Murray, supra; Didio, supra;* Dissents by Johnson, J. I reject this rationale as misplaced, lacking interpretation and critical analysis.

I am concerned that our Court would allow *Giffear* to be applied retroactively, absent considered and reasoned reflection. I find this reflexive adoption of retroactivity, absent argument by the parties immediately concerned with this application of *Giffear* to be unfortunate. I am forced to express my views given the number of these cases at issue in the courts of our Commonwealth.

Accordingly, I dissent.